EFFRON, Chief Judge,
with whom STUCKY, Judge, joins (dissenting):
Appellant accessed child pornography on the Internet, personally selected specific sets of images for transmission to a designated recipient, and used a hyperlink to transmit the images to the recipient. The majority opinion concludes that the record does not provide a legally sufficient basis for sustaining Appellant’s convictions for distribution and possession of child pornography. For the reasons set forth below, I respectfully dissent.
I. APPELLANT’S POSSESSION AND DISTRIBUTION OF CHILD PORNOGRAPHY ON THE INTERNET
Appellant’s experience with child pornography on the Internet commenced more than two years prior to the events at issue in the present appeal. He regularly accessed child pornography on the Internet, usually about once a week.
Appellant, who did not own a computer, had an account at an Internet cafe located on a military installation in Vilseck, Germany. During one of his on-line sessions at the Internet cafe, Appellant accessed a website known as a “Yahoo! chat room” that specialized in conversations involving persons purporting to be sexually active, underage males. The chat room provided an opportunity for a person to engage in a one-on-one written communication with another individual that would not be visible to others.
Appellant initiated a communication with an individual whose profile indicated that he *269 was a fífteen-year-old boy named “Adam” who lived in New Hampshire. Appellant, who engaged in a discussion of sexual matters with “Adam,” offered to send pictures if “Adam” would engage in “phone sex.” Through the chat room, Appellant transmitted a hyperlink to “Adam” for an Internet site known as a “Yahoo! Briefcase.” “Adam,” who was a New Hampshire police officer, clicked on the briefcase, which contained eight sexually explicit pictures.
Appellant and “Adam” had added one another to their “buddy lists,” which provided an on-screen indication as to whether named persons were available for communicating in the chat room. Several days later, Appellant returned to the Internet cafe, logged onto a computer, accessed the chat room, and initiated communication with “Adam.” In response to Appellant’s request to engage in phone sex, “Adam” asked Appellant to send pictures. After further chat room conversation of a sexual nature, Appellant sent “Adam” two new hyperlinks for locations containing sexually explicit pictures. He also transmitted the hyperlink for the eight pictures he had shared during their first online chat.
The following week, Appellant initiated a third online chat with “Adam.” Once again, the conversation focused on sexual matters, including Appellant’s sexual interest in “Adam’s” younger brother, a fictitious person whom Appellant believed to be a real twelve-year-old boy. In response to “Adam’s” request for pictures of “guys 10-14,” Appellant accessed a Yahoo! Briefcase site that contained child pornography. After he viewed the pictures to confirm that they contained child pornography, he sent the hyperlink for those sites to “Adam” via a chat room conversation. “Adam” promptly clicked on the hyperlink, which revealed fifty-two pictures, the majority of which depicted children under the age of eighteen engaged in sexual acts and exhibition of genitalia.
The undercover detective, who posed as “Adam,” testified that the pictures appeared on his computer as soon as he clicked on the hyperlink and selected the individual photographs listed as image files in the Yahoo! Briefcase. The detective explained that the hyperlink provides a superior method of sending pictures, as compared to sending files containing individual pictures, noting that “you can send hundreds of pictures with a single transmission, whereas if you actually send the individual files, it’s going to take more time, and they have to be sent one at a time.”
II. LEGAL SUFFICIENCY OF THE EVIDENCE
The present appeal concerns Appellant’s convictions for distributing and possessing child pornography, as modified and affirmed by the Court of Criminal Appeals. The standard for legal sufficiency involves a very low threshold to sustain a conviction. See Jackson v. Virginia, 443 U.S. 307, 318, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). As noted in the majority opinion, the standard is “ “whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt.’ ” United States v. Navrestad, 66 M.J. at 264 (C.A.A.F.2008) (quoting United States v. Dobson, 63 M.J. 1, 21 (C.A.A.F.2006)).
A. Distribution
As affirmed by the Court of Criminal Appeals, Appellant was convicted of distributing child pornography in violation of Article 134, UCMJ, 10 U.S.C. § 934 (2000) (proscribing conduct that is service discrediting or prejudicial to good order and discipline). Assuming that the distribution charge incorporated the terms of 18 U.S.C. § 2252A(a)(2) (2000), see Navrestad, 66 M.J. at 263 n. 3, Appellant must demonstrate on appeal that the evidence was insufficient to convince a reasonable factfinder that he knowingly distributed “child pornography” or “material that con-tainted] child pornography,” and that he did so “by any means, including by computer.” The term “child pornography,” which is not limited to images or pictures, includes “data stored on computer disk or by electronic means which is capable of conversion into a visual image.” 18 U.S.C. § 2256(5), (8) (2000).
*270 In the present appeal, Appellant does not contest that he was familiar with the procedures for accessing child pornography on the Internet, that he knowingly accessed several sites on the Internet in response to another person’s request to receive child pornography, or that he knowingly selected specific images for viewing by the recipient. Further, he does not contest that he knowingly transmitted hyperlinks to the recipient in response to the request for child pornography, or that he knew that his action in transmitting the hyperlinks would provide the recipient with near-instantaneous views of the specific child pornography images selected by Appellant.
Appellant’s claim on appeal is that the evidence is insufficient as a matter of law because transmission of a hyperlink, a path to a website, does not meet the statutory criteria for the offense of distribution. According to Appellant, the hyperlink in the present case was not capable of conversion into child pornography because the recipient could not access the pornography through a one-step click on the hyperlink. Appellant relies on the fact that the recipient of the hyperlink had to take two steps to view the pornography: first, click on the briefcase to access the briefcase, and second, click on a specific file in the briefcase to view the child pornography.
The United States Court of Appeals for the Second Circuit, in Universal City Studios, Inc. v. Corley, 273 F.3d 429, 456 (2d Cir.2001), encountered a similar objection when addressing the issue of improper trafficking of copyrighted material under the Digital Millennium Copyright Act (DMCA), 17 U.S.C. §§ 1201-1332 (Supp. V 1999). In Corley, the district court issued an injunction prohibiting a company from posting software on its website that facilitated improper access to copyrighted materials through pirating software. Corley, 273 F.3d at 434-35. The company also posted hyperlinks to other websites where the pirating software could be found. Id.
In affirming the injunction against a variety of challenges, including First Amendment considerations, the Second Circuit offered the following description of the manner in which a hyperlink permits distribution of restricted information:
A hyperlink is a cross-reference (in a distinctive font or color) appearing on one web page that, when activated by the point-and-elick of a mouse, brings onto the computer screen another web page. The hyperlink can appear on a screen (window) as text, such as the Internet address (“URL”) of the web page being called up or a word or phrase that identifies the web page to be called up, for example, “DeCSS web site.” Or the hyperlink can appear as an image, for example, an icon depicting a person sitting at a computer watching a DVD movie and text stating “click here to access DeCSS and see DVD movies for free!” The code for the web page containing the hyperlink includes a computer instruction that associates the link with the URL of the web page to be accessed, such that clicking on the hyperlink instructs the computer to enter the URL of the desired web page and thereby access that page. With a hyperlink on a web page, the linked web site is just one click away.
Id. at 455.
The Second Circuit agreed with the district court’s conclusion that the DMCA, including statutory prohibitions against trafficking, should apply to hyperlinks because of the “functional capability” of the hyperlink even though the hyperlink was merely a path rather than an actual version of the pirating software. Id. at 456. Although the hyperlink did not literally contain the pirating software, the Second Circuit observed, “[a hyperlink] conveys information, the Internet address of the linked web page, and has the functional capacity to bring the content of the linked web page to the user’s computer screen.” Id.
As in the present ease, the appellants in Corley contended that a hyperlink should be treated as merely publication of an address at which a third party might obtain prohibited material. Id. The Second Circuit rejected the analogy, stating:
Appellants ignore the reality of the functional capacity of ... hyperlinks to facilitate instantaneous unauthorized access to *271 copyrighted materials by anyone anywhere in the world.... [T]he injunction’s linking prohibition validly regulates the Appellant’s opportunity instantly to enable anyone anywhere to gain unauthorized access to copyrighted movies on DVDs.
Id. at 457.
The Second Circuit emphasized that hyperlinks take one “‘almost instantaneously to the desired destination.’” Id. at 456. Unlike a website address printed in the newspaper describing where to find child pornography, a hyperlink provides a means to transmit the content of the website to the user’s computer. The recipient’s ability to access and use images transmitted by hyperlink is functionally indistinguishable from the ability to access and use images transmitted as individually saved files.
In that context, the Second Circuit also rejected the company’s suggestion that providing a hyperlink to a website should be analogized to a newspaper publishing the address of a bookstore that carries obscene materials. Id. at 456-57. Focusing on the instantaneous distribution that occurs when a website is accessed via a hyperlink:
Like many analogies posited to illuminate legal issues, the bookstore analogy is helpful primarily in identifying characteristics that distinguish it from the context of the pending dispute. If a bookstore proprietor is knowingly selling obscene materials, the evil of distributing such materials can be prevented by injunctive relief against the unlawful distribution (and similar distribution by others can be deterred by punishment of the distributor). And if others publish the location of the bookstore, preventive relief against a distributor can be effective before any significant distribution of the prohibited materials has occurred. The digital world, however, creates a very different problem. If obscene materials are posted on one web site and other sites post hyperlinks to the first site, the materials are available for instantaneous worldwide distribution before any preventive measures can be effectively taken.
Id. at 457.
The Second Circuit’s functional treatment of distribution of information via hyperlinks in the context of the highly sensitive First Amendment considerations applicable to copyright litigation is consistent with the testimony developed during Appellant’s trial. Witnesses for the Government established that a hyperlink provided an efficient means of distributing photographic images. One witness testified that although images can be distributed numerous ways, use of a hyperlink is “streamlined.” One click on the hyperlink brought the recipient directly to the website, along with access to any files and digital images located at that website. Through the hyperlink, Appellant distributed child pornography by electronic means capable of conversion into images within the meaning of the statute, 10 U.S.C. § 2256(5), (8), and accomplished his distribution in a manner far more expeditious and efficient than if he had done so through traditional mail or by attaching individual files to an email.
There may well be situations in which the use of a hyperlink falls outside of the proscriptions of the CPPA. The present case, however, does not involve unknowing or inadvertent transmission, nor does it concern communications arguably protected by the First Amendment or other applicable law. Appellant used a hyperlink to send “Adam” fifty-two images of child pornography — images that the recipient could access with a simple click on the hyperlink, followed by a click on the individual images. Law enforcement officials testified that the images included photographs of actual children who had been sexually abused and photographed by adults. Accordingly, the evidence was legally sufficient to sustain Appellant’s conviction for distribution of child pornography.
B. Possession
Appellant contends that he did not possess child pornography because possession entails more than viewing or storage on a temporary Internet file. Assuming that mere viewing through a medium in which images are stored on a temporary file does not amount to possession, the present case is not so limited. Appellant knowingly accessed a *272 child pornography website for purposes of transmitting images to another person. After he accessed the website displaying the images, he used hyperlinks to capture specific images, and transmitted the images via the hyperlinks to another party. The fact that others may have had the ability to access the website as well does not diminish the fact that Appellant exercised sufficient dominion and control over the images to select personally the pictures he wished to transmit, and to take the necessary steps to distribute the pictures to a specific recipient selected by Appellant without interference or control by another person. In that context, the record contains ample evidence under which a reasonable factfinder could conclude that he possessed child pornography in a manner that was either service discrediting or prejudicial to good order and discipline under Article 134, UCMJ.